IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


Lori L. K.,[1]

      Plaintiff,

  v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

Case No. 3:18-cv-00557-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Lori K. ("Plaintiff") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") on February 27, 2018. For the reasons that follow, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

On November 20, 2014, Plaintiff filed for DIB, alleging disability beginning on March 26, 2014. The claim was denied initially on March 23, 2015, and upon reconsideration on May 29, 2015. Following denials at the initial and reconsideration levels, Plaintiff filed a written request for a hearing on June 9, 2015. An administrative law judge ("ALJ") held a hearing on November 18, 2016. Plaintiff was represented by counsel at the hearing, and she and a vocational expert ("VE") offered testimony. The ALJ found Plaintiff not disabled in a written decision issued on February 28, 2017. Plaintiff requested a review of the ALJ's decision from the Appeals Council ("AC") and submitted new evidence for its consideration. On February 15, 2018, the AC denied review of the ALJ's decision and declined to consider and admit Plaintiff's new evidence. Following that denial, Plaintiff filed the present complaint in this Court.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ...a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing the ALJ's findings, district courts act in an appellate capacity, not as the trier of fact. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The district court must affirm the ALJ's decision unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v.*

*Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The court must evaluate the complete record and weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation, but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987);

20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since the alleged onset date of March 26, 2014 through the date last insured. Tr. 16. 20 C.F.R; §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found that plaintiff had severe impairments of "obesity, diabetes mellitus with neuropathy, sacroilitis, depression, and anxiety." Tr. 16. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 17. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). The ALJ found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to no more than occasional climbing ladders, ropes, and scaffolds. She needs to avoid concentrated exposure to unprotected heights, moving machinery, and similar hazards. She is limited to performing simple, repetitive, routine tasks that require no more than occasional contact with coworkers and the public.

Tr. 18. At step four, the ALJ found that Plaintiff was "unable to perform any past relevant work." Tr. 28. At step five, the ALJ found that there were "other jobs existing in significant numbers in the national economy that Plaintiff could perform," including motel cleaner, electronics worker, and price marker. Tr. 28-29. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. Tr. 29.

/ / /

## DISCUSSION

Plaintiff raises five issues on appeal. Plaintiff contends that the Commissioner erred in: (1) improperly evaluating plaintiff's subjective symptom testimony, (2) improperly evaluating lay witness statements; (3) improperly analyzing the medical evidence; (4) improperly assessing Plaintiff's RFC; and (5) not considering and reviewing the new evidence submitted to the AC. The Court will address each issue in turn.

I.    *Subjective Symptom Testimony*

Plaintiff argues that the ALJ improperly evaluated Plaintiff's subjective symptom testimony. Plaintiff partially relies on the additional medical records which were submitted to the AC following the ALJ initial decision. As discussed below, the Court finds that the supplemental evidence Plaintiff does not provide any new or relevant information which would cause the Court to find harmful error in the ALJ's decision. Therefore, in this section, the Court examines Plaintiff's additional arguments concerning the ALJ's evaluation of Plaintiff's symptom testimony.

When a claimant's medically-documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints

are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the ALJ's credibility finding is specific, clear, and convincing, and supported by substantial evidence in the record, the court may not engage in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The regulations describe a two-step process for evaluating symptoms testimony. 20 C.F.R. §§ 404.1529(a) & (c)(1); 416.929(a) & (c)(1). The ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce symptoms, including pain. *Id.* Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *Id.* For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities. *Id.*

In the present case, the ALJ's findings regarding Plaintiff's symptom testimony were specific, clear, and convincing as to why he did not find Plaintiff's symptoms to be consistent with the other evidence in the record. Tr. 19-22. In his decision, the ALJ split the symptom analysis into two parts: mental health and physical health.

Regarding Plaintiff's mental health-related symptoms, the ALJ found that they "primarily show symptoms of anxiety that appear to be in reaction to situational stressors, such as poor finances or believing herself to be harassed by supervisors." Tr. 22. The ALJ relied on evidence from the medical record to reach this conclusion. Tr. 19-22. The ALJ relied on the reports of Dr. Patricia Engle, MD, Catherine Melo, MSW, Dr. Laurence Binder, MD, Sara Mueller, MA, QMHP, Wendy Sell, BSW, and Dr. Robert Olsen, MD. *Id.* The ALJ used these sources to cite specific examples of inconsistencies between Plaintiff's testimony and other evidence in the record. *Id.* For example, with Dr. Engle's reports, the ALJ noted that in March of 2014, two days after the alleged onset date, Plaintiff had complained of "corrective feedback" and a "work plan" at her job that aggravated her anxiety. Tr. 19. At a follow-up with Dr. Engle in May of 2014, Plaintiff reported sleeping better with a new medication, and that her medication was being managed by a psychiatrist. *Id.* Additionally, Plaintiff also described her work conditions as "toxic" and said that her plan was to leave her job. *Id.* In August of 2014, Plaintiff reported more situational stressors to Dr. Engle, including financial and family-related issues. Tr. 20. In both July and August of 2014, Plaintiff reported to Dr. Engle that she was "excited" about starting vocational rehabilitation. Tr. 19-20. Dr. Engle wrote that she felt Plaintiff was "clearly motivated to work." Tr. 20.

For Dr. Binder, the ALJ noted that Plaintiff also complained of stress and anxiety caused by work conditions and financial problems. Tr. 19. The ALJ viewed Ms. Mueller's and Ms. Sell's notes longitudinally and observed that Plaintiff's anxiety

fluctuated based off situational stressors but that she experiencing success with using techniques she learned in counseling. Tr. 20-21. Additionally, the ALJ noted that Ms. Sell's notes reflected that Plaintiff could maintain regular appointments and navigate various local social service agencies. Tr. 21. Finally, the ALJ looked at the notes of Dr. Olsen, who reported that Plaintiff was conversing cordially with clinic staff before her appointment, but that Plaintiff's demeanor changed "drastically" at the start of the appointment. *Id.* The ALJ also quoted Dr. Olson's objective findings, which reported a fairly normal and calm demeanor despite the Plaintiff's expressed panic and stress. *Id.* Indeed, Dr. Olson noted that Plaintiff was "very invested" in a PTSD diagnosis. *Id.* The ALJ also described how, at Plaintiff's follow-ups with Dr. Olson, Plaintiff displayed the same calm, alert, and oriented behavior. Tr. 21-22.

The ALJ cited to numerous sources within the record and notes patterns within Plaintiff's history of seeking mental health treatment. In sum, the ALJ relied on objective medical evidence in the record, as well as on Plaintiff's work history, on the pattern of situational stressors that correlated with Plaintiff's anxiety, and on the evidence of some improvement with treatments. Thus, based on this record, the Court finds that the ALJ did not err in discrediting Plaintiff's statements related to the intensity, persistence, and limiting effects of her mental health symptoms.

Regarding Plaintiff's physical health-related symptoms, the ALJ found that Plaintiff's treatment plan had been conservative and not indicative of physical symptoms or limitations so severe as to be disabling. Tr. 23. The ALJ relied on sources within the record to cite to specific examples of inconsistencies between Plaintiff's

testimony and other evidence in the record. Tr. 22-23. For example, Plaintiff underwent elective laparoscopic gastric bypass surgery on July 2015 to address her obesity and subsequent health complaints. Tr. 22-23. The ALJ identified notes from Dr. Richard Hsu two months after the surgery that stated Plaintiff was doing well and that her blood sugars were doing better. Tr. 23. The ALJ reviewed several other notes from Dr. Hsu that indicated overall that, besides some sacral and lower lumbar tenderness, Plaintiff's systems were running normally. *Id.* The treatments recommended by Dr. Hsu involved increased dosages of already prescribed medications, continuation with physical therapy, and a new medication recommendation when Plaintiff reported feeling "overwhelmed." *Id.*

This Court finds that the ALJ in this case relied on clear, convincing, and specific reason for discrediting Plaintiff's subjective symptom, namely the conservative, routine treatment prescribed and clear evidence of improvement after the July 2015 elective surgery. As such, the Court finds that the ALJ did not err in discrediting Plaintiff's statements related to the intensity, persistence, and limiting effects of her physical symptoms.

/ / /

/ / /

II. *Lay Witness Testimony*

Plaintiff next argues that the ALJ failed to give appropriate weight to the lay witness statement submitted by Plaintiff's husband, Victor K. The ALJ reviewed the statement and found that, while it was consistent with plaintiff's own subjective

testimony, it conflicted with evidence contained in the medical record. Plaintiff argues that, if given proper weight, this statement would have resulted in greater exertional and non-exertional limits to her RFC.

Lay witness testimony regarding the severity of a claimant's symptoms or how impairment affects a claimant's ability to work is competent evidence that an ALJ must consider. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony is harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (citations omitted).

Here, this Court has already determined that the ALJ gave clear and convincing reasons for not fully crediting Plaintiff's symptom testimony, which is consistent with the lay witness statement. This alone would be enough to discount the testimony, however, the ALJ also noted that the statement was at odds with other evidence in the medical record. Inconsistency with medical evidence is a germane reason to discount lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Thus, this court finds that the ALJ did not err in discounting the statement of plaintiff's husband.

*III.   Medical Opinion Evidence*

Plaintiff next argues that the ALJ improperly discounted the testimony of six health professionals: Sara Mueller, MA, QMHP; Wendy Sells, BSW; Sara Paul, PMHNP; Dr. Patricia Engle, MD; Dr. Laurence Binder, PhD; and Dr. Richard Olsen, MD. This Court addresses each in turn.

Acceptable medical sources for the purpose of Social Security cases include licensed physicians, licensed psychologists, licensed optometrists, and licensed podiatrists. 20 C.F.R. § 404.1513(a). Nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists are considered other medical sources. 20 C.F.R. § 404.1513(d)(l). Nonacceptable medical sources are "not entitled to the same deference" as acceptable medical sources. *Molina,* 674 F.3d at 1111. An ALJ may not reject the competent testimony of other medical sources without comment. *Stout v. Comm 'r of Soc.Sec.,* 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of other medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina,* 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010)).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r*

*of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

A.    *Other Medical Sources*

Sara Mueller, MA, QMHP, Wendy Sells, BSW, and Sara Paul, PMHNP, all represent testimony of sources which fall into the "other" category of medical opinion evidence, otherwise known as nonacceptable medical sources. As such, the ALJ needed to only give germane reasons to reject their testimony. *Molina,* 674 F.3d at 1111.

First, the ALJ gave Ms. Mueller's testimony little weight because Ms. Mueller did not provide an opinion about Plaintiff's abilities and limitations. Tr. 26. Ms. Mueller only stated that Plaintiff was currently engaged in treatment for anxiety management skills while subjectively reporting high levels of anxiety. *Id.* The ALJ

did, however, give some of Ms. Mueller's testimony regarding Plaintiff's "moderate" limitations. Tr. 27.

Next, the ALJ gave only limited weight to Ms. Sell's testimony because of the broad and vague degree of limitations that Ms. Sell assigned to the Plaintiff. *Id.* The ALJ also found that Ms. Sell's nonspecific findings were inconsistent with the record as a whole and specifically noted the differences between Ms. Sell's and Dr. Olson's notes. *Id.*

Finally, the ALJ gave only limited weight to Ms. Paul's statements because there was no indication in the record of how long Ms. Paul had seen Plaintiff, and because Ms. Paul's finding for Plaintiff having "severe" limitations was unsupported by the record. *Id.*

Thus, the ALJ provided germane reasons to give limited weight to these other medical sources' testimonies. As such, this Court finds no error in the ALJ's assignment of weight.

*B.    Accepted Medical Sources*

Dr. Patricia Engle, MD, Dr. Laurence Binder, PhD, and Dr. Richard Olsen, MD, provided opinions that the ALJ only afforded limited weight. Tr. 26. These physicians are all accepted medical sources, so an ALJ may only reject their opinion by "providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

Dr. Engle's statement was based off of her experience treating Plaintiff for three months. Dr. Engle believed that Plaintiff could not work due to "acute" anxiety, depression, and panic attacks. Tr. 26. The ALJ gave three reasons why he afforded Dr. Engle's statement limited weight: (1) "three months does not meet the 12-month durational requirement required by the Social Security Regulations;" (2) the statement did not reflect any of Dr. Engle's beliefs about what Plaintiff *could* do, only a conclusion that Plaintiff cannot work;[2] and (3) the longitudinal record did not support the limitation endorsed by Dr. Engle. *Id*. Upon review of the record, the ALJ's reasons are specific, legitimate, and supported by substantial evidence.

Dr. Binder's statement came from a psychological examination in May 2014. Tr. 19. Dr. Binder provided a diagnosis of generalized anxiety disorder and reported statements from Plaintiff about stress and anxiety. *Id*. The ALJ noted that the examination was done for Plaintiff's application for private insurance disability benefits and did not provide any treatment recommendations. *Id*. The examination and diagnosis were reflected in the record and considered by the ALJ as consistent with the longitudinal record. *Id*. Thus, the court finds no harmful error in the ALJ's evaluation of Dr. Binder's Opinion.

---

[2] See *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."

Dr. Olsen's statement said that he believed Plaintiff's impairments cause marked limitations in certain areas of Plaintiff's mental functioning, leaving Plaintiff unable to "meet competitive standards" in areas of cognitive and social functioning. *Id.* Dr. Olsen also claimed that the claimant's impairments would cause her to miss work over four times a month. *Id.* The ALJ found that Dr. Olsen's own treatment notes did not support "the extreme level of limitation" he proposed. *Id.* The ALJ looked to Dr. Olsen's treatment notes from prior encounters with Plaintiff. *Id.* In those notes, Dr. Olsen observed the Plaintiff before and during an appointment and noted that:

> [Plaintiff] was observed conversing cordially with clinic staff. Additionally, [Plaintiff] stated her mood was 'fine, thank goodness.' However, her demeanor changed 'drastically' at the start of the appointment, as she then alleged having two or three panic attacks daily and claimed to have nightmares regarding her past job. She also expressed ongoing stress regarding her financial situation. Objectively, she appeared calm and exhibited normal speech and thought processes.

Tr. 21. Additionally, Dr. Olsen noted that Plaintiff appeared calm, exhibited normal speech, thought processes, and the appropriate affect. *Id.* Dr. Olsen wrote that Plaintiff appeared "very invested" in a PTSD diagnosis, but he listed her diagnoses as "anxiety NOS and rule-out problematic personality traits." *Id.* In sum, the ALJ found that Dr. Olsen's opinion were contradicted with his treating notes and record as whole. Upon review of the record, the court finds that there is substantial evidence to support the ALJ's specific and legitimate reasons for giving limited weight to Dr. Olsen's statement.

As noted above, if the evidence is subject to more than one interpretation, but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund*, 253 F.3d at 1156. The ALJ weighed conflicting evidence appropriately providing specific and legitimate reasons for not fully crediting the sources discussed above. Accordingly, the Court finds no error in the ALJ's review of the medical opinion evidence.

## IV.   RFC

Plaintiff next argues that the ALJ's RFC was inadequate and does not establish Plaintiff's ability to work. Pl.'s Br. at 20. The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Plaintiff argues that the restrictions set by the ALJ do not address all of plaintiff's reasonable, medically determinable limitations. Pl.'s Br. at 20. Plaintiff

specifically asserts that the ALJ did not consider Plaintiff's psychiatric impairments or her bilateral carpal tunnel syndrome. *Id.* Regarding Plaintiff's carpal tunnel syndrome, the ALJ used the objective medical evidence provided by an examination of the Plaintiff by Dr. Tatsuro Ogisu, MD. Tr. 25. The ALJ found Dr. Ogisu's "examination report, particularly his objective observations," to be "strong persuasive evidence." *Id.* Dr. Ogisu's examination assessed the Plaintiff with a history of bilateral carpal tunnel syndrome that he deemed "resolved." *Id.* Regarding Plaintiff's psychiatric impairments, the ALJ based his opinions on "the substantial weight of the objective medical evidence, the course of treatment, her work history, and the opinions of Drs. Ogisu, Ju, Kessler, Davenport, Kehrli, Goldman, and Becker" when determining the Plaintiff's RFC. Tr. at 28.

The ALJ assigned weight to conflicting medical opinions, resolved the conflicts in the record, and translated his findings into concrete functional limitations in the RFC. Tr. 19-28. This Court has already found no error in the ALJ's findings regarding Plaintiff's subjective symptom testimony, her husband's lay witness testimony, and medical opinion evidence. Thus, the ALJ's RFC was adequate and properly established Plaintiff's ability to work.

*V.     New Evidence Submitted to AC*

After the ALJ's unfavorable decision, Plaintiff sought review from the AC and submitted new records which were not presented to the ALJ. Tr. 2. These records included: work records from Providence Health System dated May 2, 2005, to August 7, 2014; medical records from Providence Medical Group Gateway dated February 17,

2016, to March 10, 2017; medical records from LifeWorks Northwest dated January 3, 2017, to May 9, 2017; medical records from The Oregon Clinic dated February 13, 2017, to February 23, 2017; medical records from The Oregon Clinic dated March 27, 2017, to June 23, 2017; and medical records from The Oregon Clinic dated April 3, 2017. *Id.*

Plaintiff submits several arguments regarding the new evidence that was submitted to the AC after the November 18, 2016, hearing. First, Plaintiff argues that the AC had a duty to review the new evidence and make it part of the record. Pl.'s Br. at 7-8. Second, Plaintiff argues that the new evidence submitted to the AC rebuts the ALJ's conclusions that Plaintiff's medical record does not support allegations of disability. *Id.* at 11. Additionally, Plaintiff argues that, if the ALJ were compelled to consider the new evidence submitted to the AC, "he would have to add fine and gross manipulation limitations to the RFC." *Id.* at 12. This Court disagrees.

Beginning with the first argument, the Ninth Circuit has stated that federal courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec.,* 682 F.3d 1157, 1161 (9th Cir. 2012) (citing *Taylor u. Comm'r of Soc. Sec.,* 659 F.3d 1228, 1231 (9th Cir. 2011)). Instead, when the AC is presented new evidence in deciding whether to review an ALJ's decision, the evidence becomes part of the administrative record and the Court must consider the new evidence, along with the record as a whole, when reviewing the ALJ's decision for substantial evidence. *Id.* at 1162- 63; *see also Lingenfelter v.*

*Astrue,* 504 F.3d 1028, 1030 n.2 (9th Cir. 2007) (noting that when the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council); *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review.").

This Court declines to review the decision of the AC in this case, because the decision is a non-final agency action. Additionally, the new evidence submitted to the AC is available for this Court to review in the form of an administrative record. Tr. 1064-1423. Consistent with *Brewes*, this new evidence is now part of the administrative record, and the Court will consider whether the ALJ's decision is still supported by substantial evidence in light of the record as a whole. 682 F.3d at 1162-63.

The Court first examines plaintiff's work records from Providence Health System dated May 2, 2005, to August 7, 2014. These records included Plaintiff's original work application; new employee training and paperwork; work performance assessments (done by Plaintiff for herself and by supervisors for Plaintiff); confidentiality statements; human resource policies; corrective action notices against the Plaintiff; work plans for the Plaintiff; shift change notices; internal job postings and applications; pay raise notices; email chains; and termination paperwork. Tr. 1064-1232. Much of this information was dated up to nine years before the alleged onset date, and even the more current documents did not provide any information

that relates to Plaintiff's current disability allegations. After reviewing the documents provided in the work records, this Court finds no new or material information that would have affected the ALJ's decision.

Next the Court turns to the medical records from Providence Medical Group Gateway dated February 17, 2016, to March 10, 2017. There are progress notes from Dr. Richard L. Hsu, MD, that contain subjective, objective, assessment, and plan portions. Tr. at 1320-31.

The subjective portions of these medical records do contain conditions that were not brought up in the ALJ hearing, but those portions are essentially a recitation of the Plaintiff's own impressions. Tr. at 1320-21, 1323-27, 1329-30. In the objective findings, Dr. Hsu records consistently normal findings regarding Plaintiff's alertness and orientation, general vitals, and responses, Tr. at 1320-31, and notes that Plaintiff seemed anxious or depressed in five of the eight assessment portions he wrote. Tr. 1320, 1322, 1324, 1325, 1326.

The objective portions also included: one reference to Plaintiff exhibiting lower back tenderness, Tr. 1320; one reference to an abdominal cyst, Tr. 1325; and one reference to a callus on Plaintiff's foot, Tr. 1324. The assessment portions regularly include references to conditions this Court already knows from the ALJ hearing: anxiety, depression, diabetes, obesity, and lower back and sacral pain. Tr. 16. Other conditions mentioned in the assessment portion include PTSD, allergies, hypertension, bronchitis, headaches, mild cervical stenosis, and thyroid nodules. Tr. at 1320-31.

In the plan portions, Plaintiff was given many instructions to continue treatment, referrals to other departments, referrals to physical therapy, and instructions to follow up at a later time. *Id.* Even with the newly alleged impairments, Plaintiff's treatment was routine and conservative, and much of what is seen in these documents reflect what was considered in the ALJ hearing. Additionally, Dr. Hsu's plans did not include any instructions that would change the limitations set by the ALJ at the hearing. After reviewing the documents provided in these medical records, this Count finds no new or material information that would have affected the ALJ's decision.

The medical evidence from LifeWorks Northwest dated January 3, 2017, to May 9, 2017, contains records of multiple appointments that appear therapeutic in nature. Tr. 1356-1423. These documents do not provide any kind of diagnostic impressions and focus on Plaintiff's anxiety, *id.*, which was already considered by the ALJ to be a severe impairment. Tr. 16. The first portion of these records gave descriptions of Plaintiff's self-reported situation and status, how the provider communicated with Plaintiff, and how Plaintiff responded to that communication. Tr. 1356-77. These records merely reiterate that Plaintiff suffers from anxiety and depression, but she maintains regular appointments and receives counseling and coping mechanisms. *Id.* Plaintiff's progress notes regularly address that she suffers from "Anxiety Disorder - High levels of anxiety that affects the client's ability to function independently within the community." Tr. 1364, 1368, 1370, 1374, 1376.

This distinction, however, was addressed by the ALJ in limiting Plaintiff's RFC to reduce exposure to supervisors and the public. Tr. 18.

The Lifeworks Northwest records dated from January through May also address Plaintiff's medical progress. These notes are from Dr. Richard Olsen, MD, Tr. 1378-85. His objective findings reflect that "[Plaintiff] ambulates without assistance and moves extremities spontaneously and normally," while also noting that "[Plaintiff] maintains an inability to work due to pain, with her anxiety increasing due to pain issues and increasing financial concerns." Tr. 1381. Dr Olsen also noted that Plaintiff "deals with symptoms of PTSD, which are improved now. [Plaintiff] also has dealt with a major mood disorder, which likewise is improved with current treatment." Tr. 1384. Additionally, there is no new information that would change the limitations set by the ALJ, as all the Plaintiff's treatment plans in these records consisted of follow-ups and ordered continuation of already-existing plans. Tr. 1381, 1384. These records also contain multiple case management notes for Plaintiff, but those notes detail the LifeWorks's staff involvement in helping Plaintiff discover and apply for new resources. Tr. 1386-1423. After reviewing the documents provided in these medical records, this Count finds no new or material information that would have affected the ALJ's decision.

In the medical records from The Oregon Clinic dated February 13, 2017, to February 23, 2017, there are test results and office visit notes from Dr. Catherine Ellison, MD, one of the follow-up visits requested by Dr. Hsu. Tr. 1233-57. The office

notes reflect that Plaintiff appeared for these visits regarding an incident in the pool that occurred in January 2017. The doctor notes that:

> [t]he patient is 50 and has fairly new symptoms. She went to the gym into the pool about a month ago...and did a lot of moving around. The next day she felt heaviness in both arms, burning down the arms from the shoulder and into the upper back...It is a tingling painfulness. The next day the stomach/abdomen and thoracic back got numb...Also the legs were involved.

Tr. 1242.

Unless an impairment is expected to result in death, to meet the "duration requirement," the impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). This evidence does not show Plaintiff had medically determinable impairments that met the 12-month durational requirement, since January 2017 is the onset date given by Plaintiff for the symptoms documented in Dr. Ellison's notes, Tr. 1242, and nothing in the record suggests that the impairment is expected to last for twelve months. The treatment plans for Plaintiff consisted of going to occupational therapy, seeing her primary care provider about the nodules, her BMI, her blood pressure, continuing medication, and receiving more labs. Tr. 1246, 1252, 1257. Additionally, Dr. Ellison's findings and recommendations regarding the Plaintiff did not include any instructions that would change the limitations set by the ALJ at the hearing.

The medical records from The Oregon Clinic dated from March 27, 2017, to June 23, 2017 also have office visit notes from Dr. Ellison regarding the same January 2017 symptoms mentioned previously. Tr. 1258-1319. Once again, this evidence does not show Plaintiff had medically determinable impairments that met the 12-month

durational requirement. Further, the treatment plans for Plaintiff's stated symptoms stayed substantially similar to the plans Dr. Ellison made in February. Tr. 1262, 1275, 1281, 1284, 1290, 1303, 1315. The focus was occupational therapy for Plaintiff's hands, which were experiencing numbness. *Id.* This was the recommended treatment even after Plaintiff presented her own symptoms as "[n]umb everywhere." Tr. 1271.

Another provider at The Oregon Clinic, Dr. Oisin O'Neill, MD, also saw and examined Plaintiff as part of a follow-up request from Dr. Hsu. Tr. 1282. He wrote to Dr. Hsu on March 24, 2017, that Plaintiff "exhibits exaggerated pain behavior, functional pain behavior, and has objective Waddell's signs. I see no objective pathology on her examination." *Id.* Dr. O'Neill's instructions to Plaintiff were simply to return to the office as needed. Tr. 1284. Further reports were included from a Dr. Karen Hagan, MD, as a follow-up request from Dr. Hsu, Tr. 1289-1296, and the initial results from Dr. Hsu were also available. Tr. 1282-1286. These reports give no new information. After reviewing the documents provided in these medical records, the Count finds no new or material information that would have affected the ALJ's decision.

Finally, the Court examines medical records from The Oregon Clinic dated April 3, 2017. These are copies of records already submitted in the medical records from The Oregon Clinic dated from March 27, 2017, to June 23, 2017 and the medical records from The Oregon Clinic dated February 13, 2017, to February 23, 2017. They provide no information that has not previously been addressed in the prior paragraphs of this section.

For all the reasons discussed above, this Court finds that Plaintiff's additions to the record do not provide new or relevant information. Thus, ALJ's decision is still supported by substantial evidence from the record as whole.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is AFFIRMED, and this case is dismissed.

IT IS SO ORDERED.

Dated this 30th day of September 2019.

_____
Ann Aiken
United States District Judge